AO 91 (Rev. 08/09) Criminal Complaint

FILED

# UNITED STATES DISTRICT COURT
for the

DEC 1 0 2012

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Bryan SANCHEZ | ) | Case No. P: 12-MJ-1034 (1-2) |
| and | ) | |
| Leonel MONTELONGO | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __12-07-2012__ in the county of __Pecos__ in the __Western__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 | Conspired to Possess With Intent to Distribute approximately 8 kilograms / 17.6 pounds of cocaine, a Schedule II controlled substance. |
| 21 U.S.C. 841 A (1) | |

This criminal complaint is based on these facts:

SEE ATTACHMENT

☒ Continued on the attached sheet.

FILING OF COMPLAINT
APPROVED BY
U.S. ATTORNEY

Sworn to before me and signed in my presence.

Date: 12-10-2012

City and state: Alpine, Texas

_____
*Complainant's signature*

Mark Ruckman, Special Agent
*Printed name and title*

_____
*Judge's signature*

B. Dwight Goains, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT

**FACTS:**

On or about December 7, 2012, DEA personnel acted in an undercover (UC) capacity to negotiate the sale of approximately 4 kilograms of cocaine to two subjects who were willing to pay $26,000.00 per kilogram and be "fronted" or given 4 additional kilograms of cocaine with repayment for the additional kilograms of cocaine to be paid back after the sale of the cocaine.

DEA Alpine members with assistance from a Confidential Source, (CS) negotiated the meet in Ft. Stockton, Texas, with the interested parties.

On December 7, 2012, two subjects arrived at the Wal-Mart in Ft. Stockton, Texas, located at 11700 W. Dickinson, occupying a white 2012 Dodge ¾ ton Pickup with paper tags pulling a white 2013 gooseneck trailer. Upon arrival, the UC Agent motioned for the two subjects, later identified as Bryan SANCHEZ and Leonel MONTELONGO, to walk over to the UC's vehicle for further negotiations. However, both refused to walk over the UC's vehicle. The front passenger of the vehicle, MONTELONGO, then yelled to the UC that the money was in the trailer and said the two would follow the UC to the cocaine stash location.

The subjects then followed the UC west on I-10 and were stopped by Pecos County Sheriff's Deputies. The driver of the vehicle, SANCHEZ, gave consent to search, but then stated he did not have a key to the locked trailer. A K-9 was utilized and did alert to the trailer. The trailer was taken to the Pecos County Sheriff's Office for closer inspection and for safety of the officers.

Agents subsequently located a large amount of US Currency which was concealed within the trailer.

SA Mark Ruckman and TFO Trevor Houle read SANCHEZ and MONTELONGO their Miranda Rights and both agreed to speak with Agents. (MONTELONGO had his rights read in Spanish by a Pecos County Jail Official as well as translation of questions.)

SANCHEZ stated he owned a construction company from Kansas City, MO, and was working in Amarillo, TX, for quite some time and work was getting slow. SANCHEZ stated he went to Odessa, TX, to build a garage for a client and was expecting to get paid $27,000.00 or $28,000.00 for labor only. SANCHEZ could not name the client who he was going to work for. SANCHEZ stated he was supposed to do the job because the client had called his friend, MONTELONGO, and told him the job would be given to someone else if he did not hurry. SANCHEZ stated the truck and trailer were both his (SANCHEZ') and that SANCHEZ always worked with the trailer and truck and nobody

else was allowed to take it. SANCHEZ also stated he (SANCHEZ) was responsible for everything in either vehicle. SANCHEZ was asked if Agents were going to find anything in the vehicle such as illegal drugs, large sums of currency, or guns and weapons. SANCHEZ later stated, "When you find the money?" SANCHEZ realized he had asked this question without being told that anything was found at all. SANCHEZ then hung his head and looked at the floor. SANCHEZ was asked what he said, and SANCHEZ tried to explain his way out of the statement, saying that Agents had said they found the money, and then tried to change the subject.

MONTELONGO stated he did not know anything about money or illegal drugs and was simply working for SANCHEZ to build a house. MONTELONGO stated he and SANCHEZ were going to build a house for a client within a 2 week time span and he was to be paid $400.00 per week. When asked where his luggage and clothes were, MONTELONGO stated he was just going to go buy some clothes and hygienic items from the store. MONTELONGO pretended as if he did not know what was going on and would not confess to meeting anyone in Fort Stockton. Phones located in the vehicle did have numbers of DEA UC officials within them, although it appeared that attempts had been made to erase almost all of the calls between MONTELONGO, SANCHEZ, and UC.

SANCHEZ and MONTELONGO were transported to the Brewster County Jail for processing.

_____ December 10, 2012
Mark Ruckman
Special Agent
Drug Enforcement Administration

Sworn before me, and subscribed in my presence,

_____
B. Dwight Goains
United States Magistrate Judge